**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| AZTEC OIL & GAS, INC. and | § | Case No. 16-31895 |
| AZTEC ENERGY, LLC, et al., | § | |
| | § | |
| *Debtors.* | § | Jointly Administered |

| | | |
|---|---|---|
| AZTEC OIL & GAS, INC. and | § | |
| AZTEC ENERGY, LLC, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| *vs.* | § | |
| | § | |
| FRANK FISHER, ROBERT SONFIELD | § | |
| L. MYCHAL JEFFERSON, II., | § | Adv. Proc. No. 16-03107 |
| LIVINGSTON GROWTH FUND | § | |
| TRUST, and INTERNATIONAL | § | |
| FLUID DYNAMICS, | § | |
| | § | |
| *Defendants,* | § | |
| | § | |
| *vs.* | § | |
| | § | |
| JEREMY DRIVER, DR. KENNETH | § | |
| LEHRER and MARK VANCE, | § | |
| | § | |
| *Third Party Defendants.* | § | |

**AZTEC OIL & GAS, INC.'S REPLY**
**TO FRANK FISHER'S RESPONSE TO**
**AZTEC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**ON THE ISSUE OF FRANK FISHER'S INDEMNIFICATION**

TO THE HONORABLE DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE:

Aztec Oil & Gas, Inc. ("Aztec"), Plaintiff in the above adversary proceeding, files this

Reply to Frank Fisher's Response [Doc. 30] to Aztec's Motion for Partial Summary

Judgment on Indemnification [Doc. 23], and in support thereof would respectfully show

the Court as follows:

## 1.  INTRODUCTION

1.1     Plaintiff filed its Motion for Summary Judgment on the Issue of Frank Fisher's Indemnification on October 7, 2016 [Doc. 23] asking for summary judgment on its affirmative claims of breach of fiduciary duty and fraud and for summary judgment against Fisher for its counter-claim for indemnification. All three issues center around the legal question of whether or not Fisher was entitled to indemnification from Aztec for his legal fees from the firm of Steptoe & Johnson which represented him personally with regards to the Department of Justice ("DOJ") investigation.[1] At the end of the DOJ investigation, Fisher pled guilty to a felony and attested under oath that he knowingly violated the law.

1.2     Fisher filed his Response on November 4, 2016 [Doc. 30] which, not surprisingly, brought forth a different story. Fisher in his response attempts to prove that he is entitled to indemnification, or that there is otherwise a fact issue as to Aztec's affirmative claims in light of his affirmative defenses. However, no matter Fisher's competing story, he has still failed to bring forth any admissible evidence raising a fact issue as to whether he was entitled to indemnification or whether his taking of the funds was a breach of his fiduciary duties owed to Aztec and fraudulent.

1.3     Fisher's Response relies chiefly on five arguments:

    1.      Fisher's appearance at the October 6, 2008 meeting with the DOJ was as an officer of Aztec and that he therefore should be indemnified for

---

[1]     As the Court will recall, there were two sets of fees: those charged by Porter Hedges for work done responding to subpoenas and those charged by Steptoe & Johnson because of Fisher's conduct at the interview on October 6, 2008. *See* Doc. 30 (Fisher's Response), ¶ 46 ("as a result of the position taken by the DOJ and the FBI, Aztec's attorneys [at] Porter & Hedges, recommended that Fisher retain counsel with whom Hedges was acquainted at the law firm of Steptoe & Johnson in Washington, D.C."); *see also* DX 54-B (Affidavit of attorney Jeffrey McFadden of Steptoe & Johnson) ("We have not acted as counsel to the Company in any respect."). In its Motion for Summary Judgment, Aztec only seeks payment as to the second set of attorneys from Steptoe & Johnson which were incurred entirely independent of Aztec.

any of his conduct at the meeting—even if it was felonious.

2. The express negligence rule does not apply because: a) Fisher has not been proven to have been negligent himself and b) Fisher's decision to lie was a "decision of the Company" to which he is entitled to indemnification.

3. Fisher did not breach any fiduciary duties owed to Aztec because Fisher did not owe any fiduciary duties to Aztec.

4. Fisher did not commit fraud because there was no fraudulent intent.

5. Aztec cannot be granted summary judgment on its affirmative causes of action of breach of fiduciary duty and fraud because Fisher raised a fact issue on its affirmative defenses of statute of limitations and waiver.

1.4   These arguments do not create a fact issue for the following reasons:

1. Nevada law limits what conduct directors can be indemnified for, no matter which role they are acting in at the time of bad conduct. Fisher cannot disclaim the fact that he swore under oath that he knowingly lied to prosecutors, conduct which in no way could be in good faith. Therefore, Plaintiff has shown as a matter of law Fisher's conduct is not allowed by statute.

2. The express negligence rule precludes covering Fisher's conduct because Fisher admitted that he committed intentional misconduct under oath and the indemnification clause does not contemplate covering such conduct.

3. The argument that Fisher—who single handedly controlled the corporation through a variety of roles and holds 80% of the voting power—does not owe Aztec a fiduciary duty is frivolous.

4. Fisher's own statements at the time he was taking funds from Aztec evidences his doubt as to whether he was entitled to indemnification and thus, his taking of such funds was done recklessly which is sufficient to satisfy the fraud requirement.

5. Fisher cannot meet *his burden* on his affirmative defenses to bring forth evidence that the directors knew that Fisher was receiving funds he was not entitled to. Instead, Fisher only presents evidence of generic numbers which would not have informed the directors of the illegal nature of the conduct.

1.5   The facts make clear that Fisher was not entitled to indemnification for the Steptoe & Johnson attorney's fees and that his decision to unilaterally take them through deceit was a breach of his fiduciary duty owed to the company and fraudulent.

## 2. RESPONSES TO FISHER'S OBJECTIONS
## TO AZTEC'S SUMMARY JUDGMENT EVIDENCE

2.1    For convenience, Aztec will follow Fisher's format used in objecting to Aztec's evidence [Doc. 30, ¶ 8] and all responses are in the same order (e.g. Fisher's objection in paragraph a. is responded to in paragraph a. here). Further, Aztec will also refer to its own exhibits as PX [#] and Fisher's exhibits as DX [#].

a.   PX 6 - Affidavit of Jeremy Driver and attached spreadsheet of invoiced attorneys fees.
   i.   This affidavit and spreadsheet fall into the business judgment rule's exception to hearsay. Further, Jeremy Driver has personal knowledge that the spreadsheet is what it is purported to be: a document created by the accountant outlining all attorney's fees expenses in the related matter.
   ii.   Further, all information within this affidavit is sufficiently reliable for the court to put faith in, as it is proved up by DX 36, Declaration of Robert Ayers (an attorney of Steptoe & Johnson) and the attached spreadsheet of charges.
b.   PX 7 - Affidavit of Dr. Kenneth Lehrer ¶¶ 4, 5, 7, 11, 13, 14, 17, and 18.
   i.   Fisher has failed to sufficiently point out which objections are made as to which paragraphs and therefore has waived his objections to the extent any are unclear.
   ii.   All the preceding paragraphs are within Lehrer's personal knowledge as a director of Aztec for ten years and as a person who was around during the formation of Aztec. All these statements are based on facts, not speculation or unsupported conclusions.
   iii.   None of the preceding paragraphs are the out of court statements of another. Further, statements of Fisher, Jefferson, or Sonfield are admissible as party opponent admissions as they are all defendants in this case and all alleged to have aided or abetted each others torts.
   iv.   None of Lehrer's statements violate the parol evidence rule or best evidence rule.
c.   PX 9 - Affidavit of Waylan Johnson ¶¶ 4, 5, 6, 11, 12, 13, 15, 16, 17, and 18.
   i.   Fisher has failed to sufficiently point out which objections are made as to which paragraphs and therefore has waived his objections to the extent any are unclear.
   ii.   All the preceding paragraphs are within Johnson's personal knowledge as the president of Aztec. All these statements are based on facts, not speculation or unsupported conclusions.
   iii.   None of the preceding paragraphs are the out of court statements of another. Further, statements of Fisher, Jefferson, or Sonfield are admissible as party opponent admissions as they are all defendants in this case and all alleged to have aided or abetted each others torts.

     iv.    None of Johnson's statements violate the parol evidence rule or best evidence rule.

d.    PX 11 - Memorandum in Support of Motion to Dismiss filed in the Third Judicial District, Salt Lake City, UT by the Assistant Attorney General of Utah.

     i.    The record has been authenticated by Jeremy Driver's affidavit in PX 33 who has shown that the document is what it is purported to be. The document is further authenticated under Rule 901(b)(7).

     ii.    The document is self-authenticated pursuant to Rule 902(1) because it was filed by the Assistant Attorney General of the State of Utah with the Court and has a signature of the Assistant Attorney General affixed to it.

     iii.    The document is self-authenticated pursuant to 902(4) as a copy of a public record.

     iv.    The document is not hearsay based on the following rules: 803(6) and (8).

e.    PX 12 - Email from Kathy Berg, Division Director for the Utah Department of Commerce to Jeremy Driver.

     i.    The email has been authenticated by Jeremy Driver pursuant to his affidavit in PX 33. Emails of this sort are regularly created in business and are automatically stored in servers pursuant to company protocol.

     ii.    The email is authenticated pursuant to Rule 901(7) as it is a statement from the Director of a state office as to the status of whether or not certain corporate documents had been filed.

     iii.    The document is not hearsay under Rules: 803(1), (5), (6), (8), and (10).

f.    PX 13 - Order from the Third Judicial District, Salt Lake City, UT dismissing Aztec's petition for reinstatement

     i.    The records have been authenticated by Jeremy Driver's affidavit in PX 33 who has shown that the document is what it is purported to be. The documents are further authenticated under Rule 901(b)(7).

     ii.    The document are self-authenticated pursuant to Rule 902(1) & (4).

     iii.    The documents are not hearsay based on the following rules: 803(6) and (8).

g.    PX 21 - Email from Fidelity transfer agent to Sonfield

     i.    The email has been authenticated by Jeremy Driver pursuant to his affidavit in PX 33. Emails of this sort are created regularly in business and are automatically stored in servers pursuant to company protocol.

     ii.    The email is not hearsay pursuant to 803(6).

h.    PX _ -

     i.    Fisher has left blank the exhibit # he wished to object to, thus it is impossible for Plaintiff to respond to this objection.

### 3. AZTEC'S OBJECTIONS TO
### FISHER'S SUMMARY JUDGMENT EVIDENCE

3.1    Aztec makes the following objections to Fisher's proffered summary judgment

evidence:

    a.    DX - 24 A German website showing a purported Aztec newsletter

         i.    Unauthenticated and hearsay. Further, there is no showing the author has personal knowledge of the facts within the press release he is purported to be speaking on.

    b.    DX - 34 & 35 Emails between Waylan Johnson and Aztec's outside accountant. Attached spreadsheet to DX 35.

         i.    Unauthenticated and hearsay. Nothing is provided to prove that these emails and the accompanying attachment are what they are purported to be. Further, the statements within them were made out of court for the truth of what is asserted therein.

         ii.    Further, Fisher was not included as a party on the DX 35 email he wishes to use and at the time it was sent Fisher was no longer CEO. Moreover, the statement of cash transactions was sent by a non-party to this suit.

    c.    DX - 52 Affidavit of Franklin C. Fisher, Jr.

         i.    Aztec **Moves to Strike** ¶¶ 34 and 37 as well as any other statements within Fisher's affidavit which conflict with his previous testimony under oath that he: "corruptly endeavored to influence, obstruct and impede the due administration of justice by providing false and misleading statements to agents of the [FBI] and prosecutors... knowing that the false and misleading statements were in connection with an on-going grand jury investigation... and intending the false and misleading statements to be conveyed to the grand jury." PX 1, p. 19, ¶14.

              (1)    These statements are shams, contradictory, and said for the sole purpose of creating a fact issue on summary judgment. *See Sanchez-Estrada v. MAPFRE PRAICO Ins., Co.*, 84 F. Supp. 3d 90, 92 (D.P.R. 2015) ("[w]hen an interested witness has given clear answers to unambiguous questions, [s]he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.").

              (2)    Further, Fisher should be estopped from denying his knowing violation of the law now, when he received the benefit of a plea bargain based upon his open admission under oath of knowing and wilful violations of the law.

         ii.    ¶¶ 3, 4, 6, 8–11, 13–17, 21–24, 26, 28, 30–34 (including footnote 10), 36–39, 41–45, 48, 49, 51–53 (including footnotes 13 & 14), 55, 59, 65, 66, 67, 68, 69, 70, 71, 72 & 77 - Hearsay, not based upon personal knowledge, and/or is speculation.

         iii.    ¶¶ 6, 8–11, 13–17, 22–24, 28, 31–34 (including footnote 10), 37, 38, 41–44, 48, 51 (including footnotes 13 & 14), 52, 55, 68, 70, 72 & 79 - Calls for a legal opinion Fisher is not qualified to give since he is not an attorney.

         iv.    ¶¶ 9, 13–16, 23, 24, 30, 36, 40, 48, 55, 56, 58–60, 62–64, 65, 66, 67,

68, 69, 70, & 71 - Violates the Best Evidence rule.

    v.    Further, Fisher is not a custodian of records for Aztec and has not indicated why he has authority to authenticate the Aztec documents listed in ¶ 80. As such, these documents are hearsay and unauthenticated.

d.    DX - 52 Affidavit of Robert L. Sonfield, Jr.

    i.    ¶¶ 6–9, 11–14, 16–19 - Hearsay, not based upon personal knowledge, and/or is speculation.

e.    DX - 55 Affidavit of Les W. Hertlein

    i.    Aztec objects to the entire affidavit of Les Hertlein as not relevant, speculation, hearsay, and not based upon personal knowledge. The affidavit further lists a number of legal conclusions the affiant is not qualified to give expert advice on.

    ii.    Les Hertlein has never been an employee of Aztec or had access to its records nor has he been involved at all in the company's internal affairs. All of Les Hertlein's statements about Aztec are statements learned from others—presumably, Fisher. Further, the majority of the affidavit is simply opinions and speculation about the intents of the board and his opinion as to whether or not Aztec should be in bankruptcy.

    iii.    Moreover, this affidavit was not even written in response to the original Motion for Summary Judgment as it was signed 19th September, 2016 before the Motion for Summary Judgment was filed.

f.    DX - 56 Affidavit of Eugene Burch Dowman

    i.    Aztec objects to the entire affidavit of Eugene Dowman as not relevant, speculation, hearsay, and not based upon personal knowledge. The affidavit further lists a number of legal conclusions the affiant is not qualified to give expert advice on.

    ii.    Eugene Dowman has never been an employee of Aztec or had access to its records nor has he been involved at all in the company's internal affairs. All of Eugene Dowman's statements about Aztec are statements learned from others—presumably, Fisher. Further, the majority of the affidavit is simply opinions and speculation about the intents of the board and his opinion as to whether or not Aztec should be in bankruptcy.

## 4. ADDITIONAL SUMMARY JUDGMENT EVIDENCE

4.1    Plaintiff is using the following additional summary judgment evidence in support of its Motion for Summary Judgment:

Exhibit 34 - Franklin Fisher's letter to Bryan Mick

Exhibit 35 - Franklin Fisher's letter to Jackie Wadsworth

Exhibit 36 - Affidavit of Jeremy Driver

## 5. ARGUMENTS & AUTHORITIES

**A.      Fisher cannot be indemnified under any of his agreements or the Articles of Incorporation because he was acting completely independent of Aztec**

5.1      In his response, Fisher first argues that his appearance at the interview on October 6, 2008 (which the criminal action was based off of), was in furtherance of Aztec. It should be noted however, that this has not always been Fisher's position. When Fisher needed a due diligence report on Aztec in order for the company to receive funding, he sought out the services of Bryan Mick of Mick Law, P.C. to receive that report. When Bryan Mick inquired as to the facts surrounding Fisher's plea of guilty to a felony, Fisher wrote what is attached as PX 34, which in relevant part reads:

> I assume your inquiry is restricted to your firm acting as a third party due diligence reviewer of Aztec. Therefore, let me make clear that this is a personal matter and does <u>not</u> involve or justify involvement of Aztec. There are legal and factual reasons for the foregoing, some of which are listed as follows:
> 1.      The period of original events (other than my interview with the Department of Justice, which was individual and <u>not</u> in any capacity as an officer, director, or shareholder of Aztec) occurred from July 2004 to May 2005 ("The Period").
> ...
> 3.      No claim has ever been made by any state or federal agency, regulatory body, etc. that Aztec, or its officers or directors, are in any way a target, suspect, or directly involved in the matter in question. (I pled to personally obstructing an investigation only...)
> In summary, the situation of my pleading to one (1) count of Obstruction of Due Process of Justice does not involve Aztec nor indicate or implicate any impact of any nature on Aztec. None had been alleged, inferred or claimed by any governmental entity now or in the past.
> On the other side, I request that you leave Aztec out of it as this is a personal matter with me, does not involve Aztec, and they should not be made to suffer for something in which it is not justified that they be involved.

PX 34 (emphasis in original).[2]

---

[2]      This letter further makes clear that the original investigation was, no matter how Fisher wishes to frame the investigation, in regards to the promotion of stock by Fisher, SBI USA, and Bedford Proprietary Trading, Co. *See* PX 34, p. 2–4.

5.2     Similarly, Aztec was under the same impression, i.e. that the guilty plea was completely independent of Aztec. In fact, in response to shareholder inquiries about Fisher's plea agreement, Aztec wrote to shareholders that:

> there is no liability for Aztec related to Mr. Fisher's situation. There is also no liability for Aztec regarding any of the events, historical or present, related to Mr. Fisher's pleading, and none has been claimed, or alleged by any agency or authority... Again, no allegations or claim has been made that Aztec, as a firm, or any of its officers or directors, has or had any liability, guilt or blame, or did anything questionable or wrong regarding any of these matters. Our lawyers have confirmed the forgoing.

PX 35, ¶¶ 2 & 4.

5.3     Thus, because Fisher's conduct did not in any way involve Aztec according to Fisher's own words, Fisher is not entitled to indemnification under Aztec's Articles of Incorporation, IFD's Consulting Agreement, Fisher's Executive Employment Agreement from when he was CEO, or his independent consulting agreement with Aztec after he retired as CEO.

**B.     Fisher is not entitled to indemnification under Nevada law because Nevada law limits the scope of conduct which can be indemnified, no matter what role the person was acting in**

5.4     Nev. Rev. Stat. Ann. § 78.751 limits which conduct can be indemnified "by reason of the fact that the person is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise..." Further, Nev. Rev. Stat. Ann. § 78.7502 limits which conduct which can be indemnified on the basis of "any other... agreement... for either an action in the person's official capacity *or an action in another capacity while holding office...*" Nev. Rev. Stat. Ann. § 78.7502 (emphasis added).

5.5     Fisher has stated in his motion that all of the Steptoe & Johnson's fees were incurred because of his conduct at a single interview on October 6, 2008. Doc. 30 [Fisher's Reponse],

¶ 94 ("Fisher was investigated for conduct on a single day, October 6, 2008, when he appeared for an interview").  Fisher now claims that at the interview he was acting in his capacity as an officer. Doc. 30, ¶ 43 ("Fisher appeared for the interview for, as an officer and on behalf of Aztec..."). Thus, even under Fisher's version of the facts, his conduct is limited by the restrictions of Nevada law.

5.6     Fisher still cannot satisfy the requirements of Nevada law for the same two reasons: one, Fisher did not follow the procedural requirements and two, Nevada law does not allow indemnification for Fisher's bad faith conduct.

### i.     Fisher still has not brought forth evidence he satisfied the procedural requirements for indemnification under Nevada law

5.7     First, Nevada law requires that any permissive indemnification be approved by either the board of directors or shareholders before any payment is made. Nev. Rev. Stat. Ann. § 78.751. It is undisputed that Fisher never sought approval of the Board nor was the action approved by the shareholders as shown by the affidavits of Directors Mark Vance and Kenneth Lehrer as well as former president Waylan Johnson.

5.8     The only evidence of approval that Fisher has brought forth to dispute this is the generic Majority Consent of Shareholders dated effective July 18, 2012. DX 43. This Consent ratified "all actions of the Board of Directors and officers of Aztec precedent to July 18, 2012, and since the last previous Shareholder's meeting including any contracts and amendments to the Company's by-laws and Articles of Incorporation by the Board of Directors as allowed under Nevada law and the Company's by-laws..."

5.9     This is insufficient to raise a fact issue as to whether or not the proper procedure under Nevada law was followed because the provision on its face does not cover Fisher's conduct. Instead, the resolution only ratifies actions of "directors and officers" of which,

Fisher was neither during all of the theft after he retired on January 28, 2010. Fisher can point to no director or officer who approved his indemnification.

5.10     Further, as Jeffrey McFadden (attorney for Steptoe & Johnson) stated in his affidavit: "We have not acted as counsel to the Company in any respect." DX 54-B. Thus, there was no contract between Aztec and Steptoe & Johnson to be ratified but instead, only the illegal conversion of funds.

### ii.     Fisher still cannot create a fact issue as to whether his conduct was in good faith.

5.11     Second, Nevada law allows a corporation to permissively indemnify officers "with respect to any criminal action or proceeding, [only if the agent/officer] had no reasonable cause to believe the conduct was unlawful." Nev. Rev. Stat. Ann. § 78.7502(1)(b). The statute provides that termination of an action by "conviction or upon a plea of nolo contendere or its equivalent, does not, of itself, create a presumption that… with respect to any criminal action or proceeding, he or she had reasonable cause to believe that the conduct was unlawful." *Id* (emphasis added).

5.12     Aztec does not contend that Fisher is not entitled to indemnification based solely upon the conviction "of itself", but instead upon the accompanying Statement of the Offense Fisher signed with his plea bargain. In that document—which Fisher signed under oath—Fisher attested to the fact that he "corruptly endeavored to influence, obstruct and impede the due administration of justice by providing false and misleading statements to agents of the [FBI] and prosecutors… knowing that the false and misleading statements were in connection with an on-going grand jury investigation… and intending the false and misleading statements to be conveyed to the grand jury." PX 1, p. 19, ¶14.

5.13     Fisher's statement under oath is what makes this case similar to that taken up by the

highest court of New York in *Bansbach v. Zinn*, 801 N.E.2d 395 (N.Y. 2003) which granted

a summary judgment under very similar circumstances. In *Bansbach*, the court interpreted

a New York statute which read:

> The termination of any such civil or criminal action or proceeding by
> judgment, settlement, conviction or upon a plea of nolo contendere, or its
> equivalent, shall not in itself create a presumption that any such director or
> officer did not act, in good faith, for a purpose which he reasonably believed
> to be in, or, in the case of service for any other corporation or any
> partnership, joint venture, trust, employee benefit plan or other enterprise,
> not opposed to, the best interests of the corporation or that he had reasonable
> cause to believe that his conduct was unlawful.

N.Y. Bus. Corp. Law § 722. The Court held that the corporation was entitled to summary

judgment that a director was not entitled to indemnification, not based upon a plea alone,

but based upon statements made by the director in his plea allocution that his conduct was

knowing and willful. *Bansbach*, 801 N.E.2d at 403–04. The court then held that "Zinn's

sworn admissions leave no room for finding that he was entitled to indemnification by

Besicorp because he acted in good faith, for a purpose he reasonably believed to be in the

best interest of the corporation and had no reasonable cause to believe that his conduct was

unlawful." *Id.* at 404.

5.14    This case is unlike *Maiss v. Bally Gaming Int'l, Inc.*, No. 96-0008, 1996 WL 288290

(E.D. La. May 29, 1996) which Fisher cites to in support of his argument. In that case, there

was no information as to whether or not the officer acted in bad faith *except for the guilty*

*plea. Maiss*, 1996 WL 288290 at *2 ("Bally argues that Maiss's guilty pleas necessarily

include the admission that he had knowledge of illegal activities which he did not report to

proper authorities, thereby conflicting with the conditions under which indemnity would

be available. Bally further argues that Maiss is judicially estopped from denying criminal

knowledge and that this knowledge is sufficient to void Bally's obligation to indemnify

under the agreement."). Further, even more distinguishing from this case, is that in *Maiss* the plea contained "unusual language in mitigation of the defendant's conduct... [and] included language supporting his right to indemnity in the plea agreement." *Id.*

5.15     Thus, because Fisher admitted under oath that he committed a knowing violation of the law while at the interview (and while acting as an officer of Aztec) he is not entitled to indemnification under any circumstances. Fisher's self-serving affidavits now attached to his motion claiming good-faith for the first time cannot change this. *See Sanchez-Estrada v. MAPFRE PRAICO Ins., Co.*, 84 F. Supp. 3d 90, 92 (D.P.R. 2015) *("*when an interested witness has given clear answers to unambiguous questions, she cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.") *see also supra* Aztec's Motion to Strike Fisher's contradictory statements from affidavit, p. 5.

**C.     Fisher is not entitled to contractual indemnity because none of his agreements cover intentional misconduct, of which Fisher admitted to under oath.**

**i.     Fisher's conduct implicates the express negligence rule**.

5.16     Fisher attempts to contend that the express negligence rule is not implicated in this case because there has not been a finding of Fisher's negligence. *See* Doc. 30, ¶ 96 ("The express negligence doctrine does not apply when the indemnitee does not seek indemnity for its own negligence."). This argument is baseless, as Fisher has admitted under oath that he was more than just negligent—he intentionally deceived prosecutors for the purpose of impeding an investigation. *See Hamblin v. Lamont*, 433 S.W.3d 51, 57 (Tex. App.—San Antonio 2013, pet. denied) (Holding that the express negligence doctrine applies to intentional torts as well as negligence). Thus, because Fisher is seeking indemnification because of his own bad conduct, the express negligence doctrine is implicated and Fisher's

statements under oath vitiate any need for a fact finding as to his negligence.

### ii.    Fisher's conduct is barred by the express negligence rule.

5.17    Both the Executive Employment Agreement and the IFD Consulting Agreement only allow for indemnification of "wilful misconduct… with respect to <u>any decision made by the Company</u>." PX 2 (IFD Consulting Agreement), p. 12, ¶6.11 & PX 30 (Executive Employment Agreement), p. 14, ¶ 5.3. As Fisher's letter to Brian Mick (PX 34) and the Statement of the Offense (PX 1) make clear, Fisher's criminal investigation was a result of his own actions independent of Aztec. As Fisher said himself "let me make clear that this is a personal matter and does <u>not</u> involve or justify involvement of Aztec… the situation does not involve Aztec nor implicate any impact of any nature on Aztec. None had been alleged, inferred or claimed by any governmental entity now or in the past." PX 34, p. 1–2. Fisher even made clear that his appearance at the interview "was individual and <u>not</u> in any capacity as an officer, director or shareholder of Aztec." PX 34, p. 1. Thus, Fisher has repeatedly asserted that the criminal investigation had nothing to do with the decisions of Aztec.

5.18    Fisher tries to claim that the preceding paragraph to the indemnity provision somehow changes his lying to authorities into a decision of Aztec. The Provision in its entirety reads:

> 6.10    *Disclaimer of Responsibility of Acts of the Company*. The obligations of the Consultant described in this Agreement consist solely of the furnishing of information and advice to the Company in the form of suggestions and services. **In no event shall Consultant be required to act in behalf of, or as an agent of, or as an agent for, or represent or make management decisions for the company, nor shall Consultant do so.** All final decisions with respect to acts and omissions of the Company or any affiliates and subsidiaries, shall be solely those of the Company or such affiliates and subsidiaries, and Consultant shall under no circumstances be liable for any direct or indirect expense or cost incurred, or loss suffered, by the Company, its shareholders, or any other entity as a party as a consequence of such acts or omissions, and Company shall so indemnify Consultant from any and all such expense, cost and liability.

PX 2, p. 12 (emphasis added).

5.19    This paragraph does the exact opposite of what Fisher contends it does. It actually makes a presumption that the actions of Fisher as a consultant **are not decisions of the company** as he is not required to act on behalf of the company nor <u>shall</u> he.

5.20    Further, the title of the paragraph itself is *Disclaimer of Responsibility of Acts of the Company*. The logical intent of this paragraph is that it was written to protect Fisher from having a decision of Aztec imputed onto him, not to create an assumption that every decision Fisher made was a decision of Aztec. Fisher's reading of 6.11(c) would render it to cover "negligent or willful misconduct, occurring during the period hereof, or thereafter, with respect to any decisions made by [Fisher]." Such a reading would make the clause "with respect to any decisions made by the Company" completely superfluous and is in conflict with the assumption of non-coverage under the express negligence rule. *See Hamblin*, 433 S.W.3d at 57 ("only an indemnity provision specifically stating an intent to indemnify the indemnitee for the indemnitee's intentional torts should be enforceable against the indemnitor for the indemnitee's intentional acts.").

5.21    Thus, because Fisher has admitted under oath as to his bad faith conduct, and there is no provision within the Consulting Agreement or Executive Employment Agreement which allows indemnification for such conduct, Fisher is precluded from contractual indemnity under the express negligence doctrine.

**D.    Fisher did owe fiduciary duties to Aztec as an agent, controlling person, and CEO.**

5.22    Fisher attempts to evade summary judgment on Aztec's cause of action for breach of fiduciary duty by contending that he did not in fact owe Aztec a fiduciary duty. It is undisputed that Fisher worked as a consultant via the IFD Consulting Agreement from

2004 to 2015, as a consultant via his own independent Consulting Agreement from 2010 to 2015, and was Chairman of the Board and CEO from 2007 to 2010.

### i. Fisher owed Aztec fiduciary duties as the CEO and Chairman of the Board.

5.23    Fisher does not dispute that he owed Aztec fiduciary duties from 2007 through February of 2010 as an officer and director of Aztec. Further, Fisher's own evidence from Steptoe & Johnson shows that the first invoice in the amount of $124,456.75 was paid on January 19, 2010 while he was CEO <u>and six days before the January 25, 2010 Demand Letter was supposedly delivered to Waylan Johnson</u>. *See* DX 36-A (Invoice 2326302). Fisher undoubtedly owed a fiduciary duty at the time this payment was made and breached that duty by making that payment unilaterally and without approval from any person at Aztec.

### ii. Fisher owed Aztec fiduciary duties as an Agent.

5.24    Fisher attempts to state that he is not an agent of Aztec based on language in the IFD Consulting Agreement which reads: "The relationship between the Company and the Consultant created by this agreement is that of independent contractor as regards the Consultant, and the Consultant is not, and shall not be deemed to be, an employee or agent of the Company for any purpose." PX 2, ¶1.3.

5.25    An agency relationship is "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency § 1 (1958). This is in comparison to a master-servant relationship which requires control over the details of the work. Restatement (Second) of Agency § 2. Thus, although the two terms are often confused or used interchangeably, "An agent may be one for whose physical acts the

employer is not responsible and who is called an independent contractor in order to distinguish him from a servant, also an agent, for whose physical acts the employer is responsible. Thus... persons employed either for a single transaction or for a series of transactions, are agents, although as to their physical activities they are independent contractors." Restatement (Second) of Agency § 1, *cmt* e.

5.26    Disclaiming an agency relationship in a contract does not change reality but is only a factor to consider when deciding if there is otherwise an agency relationship. The affidavits of Directors Mark Vance and Kenneth Lehrer as well as former-president Waylan Johnson make clear that there was in fact an agency relationship between Fisher and Aztec to some extent and that Fisher abused this agency relationship by approving expenses he was not entitled to.

### iii.    Fisher owed Aztec fiduciary duties as a majority shareholder.

5.27    Fisher claims in his affidavit that he never held more than 5% of Aztec's voting stock and therefore does not owe Aztec any fiduciary duties as a majority shareholder. *See* Doc. 30, ¶ 101 & DX 52 (Affidavit of Fisher), ¶ 79. This statement does not comport with the other facts Fisher has testified to in his affidavit, e.g. that: a) SBI controlled Aztec during the time of the stock manipulation scheme (¶ 14), and b) that he purchased all of SBI's shares in 2006 (¶ 28).

5.28    Further, this is clearly contrary to the documents Fisher and Sonfield signed and then filed with the SEC. *See* PX 32, p. 6 ("Mr. Fisher is the beneficial owner of 18,892,725 shares of Common Stock of the Issuer, which represents approximately 52.11% of the outstanding Common Stock of the Issuer.") & p. 8 (Signature of Fisher). Moreover, DX 38 is simply 11 pages of Fisher transferring 10,811,570 shares to the Livingston Trust or 29.3%

of the voting shares in November of 2010. *See also* PX 26, p. 2. Thus, Fisher must have held at least 30% of the shares during the relevant time period and Fisher's statements otherwise are patently false.

5.29    Even more so, Fisher's transfer of those shares was pursuant to a trust agreement which created a <u>revocable</u> trust (the Livingston Growth Fund Trust) and thus, Fisher had the ability to control these shares at all relevant times because he had sole authority to revoke the trust or replace the trustee with or without cause. PX p. 8, ¶ 3.1. It is this same revocable trust which holds the Series A preferred shares which entitle the holder to a 70% vote. Everyone at Aztec recognized that Fisher held control over all of the shares—that's why the company did hold a single shareholder meeting between 2004 and 2012.

5.30    Thus, the undisputed evidence (other than Fisher's self-serving and sham affidavit) establishes that Fisher was a controlling shareholder of Aztec throughout the relevant time period. Further, Fisher breached his fiduciary duties owed to Aztec as a majority shareholder when he used his control over the company to pay his own personal debts which Aztec was not obligated, or legally allowed, to pay.

### iv.    Fisher owed Aztec fiduciary duties by virtue of their special relationship.

5.31    At a minimum, there was a special relationship of trust between Aztec and Fisher—the man who was running Aztec under his absolute control—that a fiduciary relationship was created under the circumstances. *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex. 1980) ("A fiduciary relation is not limited to cases of trustee and cestui que trust, guardian and ward, attorney and client, nor other recognized legal relations, but it exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed, and the origin of the confidence is

immaterial, and may be moral, social, or domestic, or merely personal."). Fisher used his influence over Aztec—as a dominant shareholder, former CEO, and Consultant—to have Aztec pay for his attorney's fees. Such payment was a breach of his fiduciary duty owed to Aztec because the attorney's fees were a personal debt of Fisher which Aztec was not required, and not legally allowed, to pay.

**E.    Fisher acted recklessly with regards to his payment of his own legal expenses.**

5.32    Fisher has attempted to create a fact issue by presenting the affidavits of Steptoe & Johnson attorneys who opine that *they themselves believed* Fisher was entitled to indemnification.[3] However, there is no fact issue as to whether Fisher's own intent was reckless. At the time Fisher was looting Aztec, he was still writing to investors: "let me make clear that this is a personal matter and does <u>not</u> involve or justify involvement of Aztec... [further, the interview] was individual and <u>not</u> in my capacity as an officer, director, or shareholder of Aztec." PX 34, p. 1 (emphasis in original). Further, Fisher's intent is shown by his lying to Director Kenneth Lehrer as to who was paying Fisher's Steptoe & Johnson attorney's fees. *See* PX 7, ¶¶ 10–14.

5.33    Thus, the undisputed evidence shows that Fisher believed that the investigation had nothing to do with Aztec or his role within Aztec but he still made the decision to charge Aztec the funds. The Court should find this evidence as sufficient to find reckless intent as a matter of law.

**F.    Fisher has not raised a fact issue as to either of his affirmative defenses.**

5.34    A plaintiff has the initial burden of proof to prove its cause of action as a matter of

---

[3]    Fisher also asserts that Aztec's accountant—who was not an employee of Aztec or an attorney—told him he was entitled to indemnification. Such a statement is hearsay and is not admissible as summary judgment evidence. The only statements of others as to Fisher's intent which have properly been proved up are those of the Steptoe & Johnson attorneys.

law. *Cont'l Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1103 (9th Cir. 1994). If a defendant wishes to resist summary judgment on a plaintiff's claim by means of an affirmative defense, then it is "incumbent on [the defendant] to produce evidence cognizable under Federal Rule of Civil Procedure 56(c) & (e) supporting the defense." *Id.* Thus, a defendant must be able to raise a fact issue as to each element of its affirmative defense to avoid summary judgment in plaintiff's favor. *Id.* at 1104.

5.35    Fisher has not presented admissible summary judgment evidence to create a fact issue as to each element of his affirmative defenses and thus, Plaintiff is entitled to summary judgment on its causes of action for fraud and breach of fiduciary duty. Further, Fisher's affirmative defenses do not prevent this Court from finding summary judgment on Fisher's counter-claim seeking indemnification for the rest of the Steptoe & Johnson legal fees.

> **i.    Fisher's summary judgment evidence does not create a fact issue as to when the directors knew of Fisher's illegal conduct.**

5.36    The statue of limitations for fraud and breach of fiduciary actions is four years. Tex. Civ. Prac. & Rem Code § 16.004. This suit was filed on April 2, 2015 and according to Fisher, the theft took place between January 19, 2010 and February 19, 2013. DX 34. The affidavits of Aztec's directors and former president make clear that Aztec did not know Aztec was paying Fisher's attorneys fees until, at earliest, early 2013. Thus, the discovery rule tolled the statute of limitations until early 2013—well within the four year statute of limitations. *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57 (Tex. 2015) ("Because fraud vitiates whatever it touches, limitations does not start to run until the fraud is discovered or the exercise of reasonable diligence would discover it.") (internal citations omitted).

5.37    Fisher has presented the following evidence to attempt to create a fact issue as to whether Aztec had knowledge as to certain payments before April 2, 2011:

- Demand letter dated January 25, 2010 PX 4
- January 13, 2011 audit response from Steptoe & Johnson DX 54
- Form 8-K Annual Report January 19, 2011 DX 39

5.38    None of these documents are sufficient to raise a fact issue.

5.39    First, Aztec submits that the theft and breach of fiduciary duty was a continuing tort which didn't accrue until 2013. Fisher had a plan to pay for all of his attorney's fees, and each time Fisher took fees, it was in furtherance of the same larger plan rather than a series of smaller thefts. Since Fisher's tort did not actually accrue until after the statute of limitations, this affirmative defense is not available as a matter of law.

5.40    More importantly however, payment of attorney's fees is not *per se* illegal. Instead, what makes the payment illegal is that the fees were paid without the Board's permission and for conduct which constituted a knowing violation of the law. Fisher can present no evidence that Aztec knew Fisher was using Aztec's corporate funds to pay for his personal attorney's fees arising from the DOJ investigation of his personal conduct. This is particularly so in light of the fact that Fisher repeatedly assured everyone at Aztec and elsewhere that this matter was completely personal and did not involve Aztec. The following demonstrates that none of the evidence shows that the directors knew or should have known that Fisher *was actually committing theft*.

        a.    **The Demand Letter does not show any intent of Aztec to allow collection of fees.**

5.41    First, Aztec submits that it is not clear that the Demand Letter was ever actually given on January 25, 2010, and the undated and separate sheet of paper does not prove

otherwise.[4] However, no matter when the letter was submitted it still did not begin the ticking of the statute of limitations.

5.42    The letter itself is simply a request for indemnification—a request which was never granted or acted upon. Knowledge of a request for funds is not the same as knowledge of theft of those same funds or knowledge that the person plans on stealing those funds. (e.g. if a person were to ask you for $5 and were to later steal $5 out of your wallet you would not be put on notice).

5.43    Further, Fisher was CEO at the time the letter was written but never gave it to his superiors at Aztec—the Board of Directors. Instead, he allegedly gave it to his inferior, Waylan Johnson, who had no apparent or actual authority to approve such expenses.

5.44    Thus, Fisher's demand for attorney's fees in the future did not put Aztec on notice that he had already stolen funds or that he planned on stealing corporate funds in the future.

### b.    Aztec's auditors knowledge is not the equivalent of Aztec's knowledge.

5.45    Fisher also submits as evidence a letter from Steptoe & Johnson sent in January of 2011 to Aztec's outside auditor informing the auditor that Steptoe & Johnson were due billings from Aztec to Steptoe. This letter is only evidence that Aztec's outside auditor received knowledge that some attorney's fees were being paid by Aztec to Steptoe & Johnson.

5.46    There is, however, no evidence as to who within Aztec ever received this letter before April 15, 2011, other than unsubstantiated claims that Fisher's administrative assistant,

---

[4]    Waylan Johnson attested that he could not remember ever seeing the Demand Letter until 2013 when he began his investigation of Fisher. The statement by Ariana Cox is on a separate sheet of paper kept with the demand letter but simply states "Hand delivered by Franklin C. Fisher, Jr. to Waylan R. Johnson." This note is not dated nor does it actually reference or explain what was hand delivered to Waylan R. Johnson.

Ariane Cox, might have received it. Further, the letter clearly does not explain the facts surrounding the payment of attorney's fees. <u>In fact, the letter does not even mention Fisher or IFD</u>. It simply states that Steptoe & Johnson represents some unnamed former director and believes it has a claim to payment of attorney's fees. The amount of these fees were $140,000—not $700,000—and were not enough to raise sufficient red flags to creating a duty for Aztec's outside accountant to further investigate. There is nothing within this letter which should have alerted Aztec's outside auditor to see if those expenses were being paid out for an illegal purpose.

5.47   Reasonable diligence does not require a plaintiff to sift through all documents for any inconsistences, but instead is satisfied when a plaintiff relies on fraudulent statements of the defendant which conceal the evidence a plaintiff could have otherwise had access to discover. *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 60–61 (Tex. 2015). In *Hooks*, the court held that while the plaintiff had a duty under the circumstance to check public records, the plaintiff did not have a duty to check past public records which would have shown the most recent public records were fraudulent. Instead, the Court held that "Though reasonable diligence should lead to information in the public record, here, the fraudulent information itself taints the public record. To require, as a matter of law, that Hooks double-check the more recent filings against earlier filings is a higher burden than reasonable diligence requires."

5.48   This case is similar to that of *Hooks*, because the documents on their face do not lead to a conclusion that a fraud was committed against Aztec. Further, Aztec had no reason to believe that the fees were for Fisher's illegal conduct since Fisher *consistently made fraudulent statements*—such as those in PX 34—assuring the directors and others in Aztec that he would be paying for his own attorney's fees. The only way such a conclusion could

be reached would be by further investigation which goes beyond any measure of reasonable diligence. Thus, this document too does not raise any fact issue as to whether Aztec should have discovered the payment of attorney's fees before April of 2011.

### c.   Aztec's 8-K does not show any evidence of illegal indemnification but only generic numbers for expenses paid.

5.49    Couched in a single sentence of Aztec's 50 page 8-K filed on January 19, 2011 the document states: "The Company also expensed $805,249 as general and administrative expenses for reimbursements of a variety of costs, including attorney's fees, to IFD under the provisions of IFD's prior consulting agreement." Doc. 30, ¶ 66.

5.50    This statement fails to raise a fact issue because by August 31, 2010 only $440,000 had been taken to date. Thus, about half of the expenses listed as "general and administrative expenses for reimbursements" were actually legitimate expenses. At the same time, Fisher repeatedly told the Board and everyone else that the DOJ matter was completely independent of Aztec and that he would be paying for it himself. Fisher has presented no evidence that the directors in their exercise of reasonable diligence should have known that a portion of this gross number was for payment of Fisher's attorney's fees for an ongoing legal matter which he repeatedly told Aztec and others was personal.

5.51    Thus, Fisher cannot present any evidence that Aztec knew or in the exercise of reasonable diligence should have known that it was making payment of attorney's <u>for the purpose of providing Fisher indemnification for the DOJ investigation into his knowing violation of the law</u>. Instead, the only evidence presented is Aztec's affidavits of Directors Mark Vance and Kenneth Lehrer as well as former president Waylan Johnson who all attest that they were never told Aztec was paying for Fisher's legal expenses.

### ii.    Fisher's waiver theory is illegal and no evidence is presented to support it.

5.52    Fisher attempts to argue that Aztec waived its ability to collect the indemnification expenses. As a matter of public policy, this should not be a legally available affirmative defense under circumstances such as these. By statute, Nevada law specifically prohibits indemnification of officers and directors who knowingly violate the law or whose acts are intentional or fraudulent. Nev. Rev. Stat. Ann. § 78.7502 & 78.751. Allowing directors to "waive" the restrictions on indemnification by refusing to pursue actions against their fellow board members would effectively nullify the statute and allow directors to make illegal payments to one another. *See generally Fernandez v. Fernandez*, 222 P.3d 1031, 1035 (Nev. 2010) (Holding that public policy prohibits parents from "waiving the right to seek modification of a support order for changed circumstances as provided in NRS 125B.080(3) and NRS 125B.145(4)").

5.53    Further, the affirmative defense of waiver requires: "(1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and (3) an actual intent to relinquish the right (which can be inferred from conduct)." *Furmanite Worldwide, Inc. v. NextCorp, Ltd.*, 339 S.W.3d 326, 334 (Tex. App.—Dallas 2011, no pet.). "There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003). Fisher has presented no evidence of Aztec's intent to relinquish its right.

5.54    Fisher has instead come forward with only the evidence already mentioned in Aztec's response to Fisher's statute of limitations argument. For the reasons mentioned above, none of this evidence shows an intent to relinquish a right to proceed against Fisher for breach of fiduciary duty or fraud.

5.55    Because Aztec had a right to pay certain attorney's fees to its agents, the mention of such payment of attorney's fees without more is not inconsistent with a right to prevent payment of other attorney's fees. The generic listing of the payment of attorney's fees in the above documents without reference to any accompanying facts is not inconsistent with Aztec's later right to reclaim such fees if it turns out they were received by its agent illegally and for conduct which was not covered.

## 6. CONCLUSION

6.1     Aztec is entitled to have its motion for partial summary judgment granted, with the Court holding that Fisher is not entitled to indemnification of his knowingly criminal conduct. Neither the Consulting Agreement, nor Aztec, ever contemplated that Aztec would indemnify Fisher for criminal and intentional misconduct taken outside the scope of the agreement. Further, such indemnification is not allowed by statute under Nevada law.

6.2     the Court should dismiss with prejudice Fisher's counter-claim for further payment of the Steptoe & Johnson attorney's fees and command Fisher to reimburse Aztec for the Steptoe & Johnson fees he has already taken. Fisher is not entitled to indemnification for any of the Steptoe & Johnson attorney's fees as a matter or law because they were incurred independent of any actions of Aztec and due solely to the criminal misconduct of Fisher.

## 7. RELIEF REQUESTED

WHEREFORE, Aztec prays that the Court grant its Partial Motion for Summary Judgment and hold:

    a.    Fisher has no right to contractual indemnification from Aztec under the Consulting Agreement;

    b.    Fisher has no right to statutory indemnification under Nevada law;

    c.    Fisher's counter-claim for indemnification for attorney's fees and damages incurred by him in connection with the Department of Justice investigation is dismissed with prejudice;

d.   Fisher's embezzlement of Aztec's corporate funds to pay for his attorney's fees was in violation of his fiduciary duties owed to Aztec;

e.   Fisher's embezzlement of Aztec's corporate funds to pay for his attorney's fees was done fraudulently;

f.   At this time, Aztec is entitled to judgment in the amount of: <u>$703,388.11 and interest thereon</u>, which represents the amount Aztec paid out of pocket to Steptoe & Johnson for Fisher's legal fees.

g.   Upon proper proof, Aztec may still seek damages if it wishes to for: 1) punitive damages for the fraud discussed in this motion; 2) attorney's fees Aztec is entitled to under the Consulting Agreement as a prevailing party to a related action; 3) the attorney's fees paid to Porter Hedges by Aztec because of the conduct of Fisher; and 4) all damages still otherwise sought in Plaintiffs' Original Complaint.

and grant any other relief Aztec may be entitled at law or under theories of equity.

Respectfully submitted,

CHRISTIAN, SMITH & JEWELL, L.L.P.

By: <u>/s/ Gary M. Jewell</u>
GARY M. JEWELL
Texas Bar No. 10664800
*gjewell@csj-law.com*
2302 Fannin, Ste. 500
Houston, Texas 77002
Telephone: (713) 659-7617
Facsimile: (713) 659-7641

**ATTORNEY FOR PLAINTIFFS
AZTEC OIL & GAS, INC. and
AZTEC ENERGY, LLC**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this the 11th day of November, 2016 that a true and correct copy of the foregoing was served via electronic mail to all parties requesting ECF Notice.

By: <u>/s/ Gary M. Jewell</u>
GARY M. JEWELL